IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 12-00498-KD-C |
| | ) | |
| HAMILTON SMITH, | ) | |
|     Defendant. | ) | |

**ORDER**

This matter is before the Court on the United States' Rule 50(b) Renewed Motion for judgment as a matter of law, or alternatively, Rule 59 Motion for New Trial (Doc. 100), Smith's Response (Doc. 101), and the United States' Reply (Doc. 105).

**I.**     <u>**Background**</u>

The United States moves for a judgment as a matter of law with regard to Smith's liability for Dam C and Dam D. (Hamilton conceded Clean Water Act ("CWA") liability for Dam E prior to the Phase I trial and the jury found him liable for Dam A and Dam B.) Specifically, the United States contends that Smith failed to present evidence to support a jury finding that he complied with the relevant mandatory Best Management Practices (BMPs) to avail himself of the "forest road" exemption to the Section 404 CWA permit requirement. Additionally, the United States asserts that even assuming Dam C and Dam D satisfy the "forest road" exemption, these dams were "recaptured" such that the permit requirement still applies, and no reasonable jury could have found otherwise.

In the alternative, the United States requests a new trial due to the legal insufficiency of the evidence supporting Smith's affirmative defense, the Court's adverse rulings on the United

1

States' motions in limine, the Court's failure to give limiting instructions as to Smith's beaver evidence, the Court's failure to give instructions for the jury to fairly evaluate recapture, and improper comments/argument made by Smith's counsel.

## II. Rule 50(b) Renewed Motion for Judgment as a Matter of Law

Rule 50(b) provides for renewed Rule 50(a) motions for judgment as a matter of law, as follows:

> **(b) Renewing the Motion After Trial; Alternative Motion for a New Trial.** If the court does not grant a motion for judgment as a matter of law made under Rule 50(a), the court is considered to have submitted the action to the jury subject to the court's later deciding the legal questions raised by the motion. No later than 28 days after the entry of judgment--or if the motion addresses a jury issue not decided by a verdict, no later than 28 days after the jury was discharged--the movant may file a renewed motion for judgment as a matter of law and may include an alternative or joint request for a new trial under Rule 59. In ruling on the renewed motion, the court may:
>
> **(1)** allow judgment on the verdict, if the jury returned a verdict;
> **(2)** order a new trial; or
> **(3)** direct the entry of judgment as a matter of law.

A jury verdict "must be left intact if there is evidence from which the decision maker ... reasonably could have resolved the matter the way it did." Rodriguez v. Farm Stores Grocery, Inc., 518 F.3d 1259, 1264 (11th Cir. 2008). "The issue is not whether the evidence was sufficient for [the losing party] to have won, but whether the evidence was sufficient for it to have lost." Id. at 1264–1265. The "court must evaluate all the evidence, together with any logical inferences, in the light most favorable to the non-moving party." Beckwith v. City of Daytona Beach Shores, Fla., 58 F.3d 1554, 1560 (11th Cir. 1995). See also Nurse "BE" v. Columbia Palms West Hosp. Ltd., 490 F.3d 1302, 1308 (11th Cir. 2007). The court determines whether "the facts and inferences point so overwhelmingly in favor of the movant ... that reasonable people could not arrive at a contrary verdict." Roboserve, Ltd. v. Tom's Foods, Inc.,

940 F.2d 1441, 1448 (11th Cir. 1991).

When evaluating a 50(b) motion "it is not the function of the Court to make credibility or factual determinations ... if there are conflicting inferences that can be drawn from that evidence, it is not the Court's role to pick the better one." Marlite, Inc. v. Eckenrod, 2011 WL 39130, *3 (S.D. Fla. Jan. 5, 2011). "If the jury verdict is supported by substantial evidence ... enough evidence that reasonable minds could differ concerning material facts—the motion should be denied. A mere scintilla of evidence in the entire record ... is insufficient to support a verdict." U.S. Anchor Mfg. v. Rule Indus., Inc., 7 F.3d 986, 993 (11th Cir. 1993). The court must "affirm the jury verdict unless there is no legal basis upon which the jury could have found for [the plaintiff]." Telecom Tech. Servs., Inc. v. Rolm Co., 388 F.3d 820, 830 (11th Cir. 2004).

The United States contends that, with regard to Dam C and Dam D, Smith failed to present evidence to support a jury determination that he had carried his burden of proof to establish the "forest road" exemption by showing compliance with: 1) the third BMP (roads be designed to "prevent" the restriction of "expected flood flows"); 2) the sixth BMP (roads "shall not disrupt" the "movement" of "aquatic life" inhabiting the water body; 3) the first BMP (roads be held to the minimum number); and 4) the seventh BMP (roads "shall not disrupt" the "movement" of "aquatic life" in a water body). Additionally, the United States contends for Dam D, that no reasonable jury could find that Smith satisfied the fourth BMP (forest roads shall be properly stabilized/maintained" to prevent erosion) due to the evidence that longstanding and unabated erosion occurred and continues to occur on the steep slopes of Dam D.

Additionally, the United States contends that assuming Dam C and Dam D satisfy the "forest road" exemption, Smith failed to carry his burden of proof to support a jury determination

that these dams were not "recaptured," such that the Section 404 permit requirement still applies. According to the United States, the evidence demonstrated that Dam C and Dam D each had significant impacts at the site, including: 1) altering the flow and circulation of Dennis Creek and its adjacent wetlands, 2) reducing the reach of Dennis Creek and its adjacent wetlands, destroying hundreds of linear feet of stream and many acres of protected wetlands, and 3) changing the use of those waters to such an extent that substantial segments of Dennis Creek no longer exist within a bed and bank and there is no longer a forested wetland with trees and abundant wetland vegetation along the banks of the stream.

### A. Dam C

#### 1. The "Forest Road" Exemption Best Management Practices ("BMPs")

##### a. First BMP

The first BMP requires that forest roads be held to the minimum feasible number, width and total length, consistent with the purpose of the specific silvicultural operations and local topographical and climatic conditions. The United States asserts that Dam C fails to satisfy this BMP because there was no evidence at trial that this dam is a *minimum* feasible width: the United States' witness Mr. Sitton testified it is 103 feet; Smith's expert Dr. Vittor estimated the width at 80 feet and the height to be at least 10 feet; and the United States' expert Dr. Kruczynski testified that the width was necessitated by the dam's excessive height (as a wider base for stability was required). The United States' expert also testified that forest roads are typically at grade and very narrow. According to the United States, Smith failed to present any evidence that he could not have built a lower and narrower crossing or that such would have prevented him from forestry operations. Moreover, the United States contends that Dam C also violates the

requirement that forest roads be held to the minimum feasible number because evidence at trial established that any forestry purpose that might be served by Dam C, could be met by Dam D, rendering Dam C unnecessary.

In contrast, Smith relies on his forestry expert Mr. Morgan who explained that Dam C's width, and total length are consistent with and necessary for Smith's forestry operations as well as the existing topographic and climatic conditions. Additionally, as to the number of roads, Mr. Malone, explained that Smith is unable to effectively accomplish his forestry operations on his property with Dam C alone.

Upon consideration the court finds that based on the evidence, reasonable minds could differ as to whether Smith complied with the first BMP.

      **b.**      **Third BMP**

The third BMP requires that forest roads that cross streams be bridged, culverted or otherwise designed to prevent the restriction of "expected flood flows" (flows during storm events that are large enough to cause a stream to leave its banks and carry water into the adjacent floodplain). According to the United States, Smith did not carry his burden of presenting evidence that would allow a reasonable jury to find that Dam C meets this requirement as the dam's design restricts expected flood flows.

Smith relies on the testimony of his forestry expert Mr. Morgan who explained that the combination of the existing culvert and spillway would prevent the restriction of expected flood flows.

Upon consideration the court finds that based on the evidence, reasonable minds could differ as to whether Smith complied with the third BMP.

c. **Sixth BMP**

The sixth BMP requires that in designing, constructing and maintaining roads, vegetative disturbance in the waters shall be kept to a minimum. The United States contends that Dam C violates this requirement because its design/size unnecessarily caused the destruction of trees and wetland vegetation in impounded areas. The United States contends that the evidence at trial demonstrated that Dam C destroyed (and disturbed) more than a minimum of trees/wetlands adjacent to Dennis Creek (hundreds of trees and thick wetland vegetation no longer exist).

In response, Smith relies on his biology/ecology expert Dr. Vittor who testified that the disturbance was kept to a minimum. Dr. Vittor based his opinion on the fact that the area behind Dam C was still a wetlands area with some vegetation. Dr. Vittor also relied on the fact that prior to the impoundment, Smith had hand cleared the area of most vegetation and that the beaver impoundments had impacted vegetation. The implication being that the disturbance was minimal because there was very little vegetation to disturb.[1]

Upon consideration the court finds that based on the evidence, reasonable minds could differ as to whether Smith complied with the sixth BMP as to Dam C.

d. **Seventh BMP**

The seventh BMP requires that a road "shall not disrupt" the "migration or other movement" of aquatic life present in the water. The United States points out that even Smith's expert, Dr. Vittor, admitted that after construction of this system of dams, stand pipes and

---

1 All parties agreed that Mr. Smith could legally hand cut and remove all the vegetation in Dennis Creek. Thus, it would seem that the BMP requiring minimal disturbance could conceivably be mooted by removing all possibly affected vegetation prior to designing and constructing a road. While this may not be the intent of the CWA, the BMP as written clearly only applies to disturbances caused by the construction of the road, not pre-construction disturbances.

elevated culverts, fish and other aquatic species were no longer able to move upstream in Dennis Creek.

Smith relies on Dr. Vittor testimony that there were no migratory species in Dennis Creek, thus the migration of aquatic life was not disturbed. As to the "or other movement" aspect, Dr. Vittor testified that the pre-existing beaver dams presented the same limitations for movement of aquatic life. Thus, Vittor concluded that Smith's Dam C did not violate this BMP because the disruption to aquatic movement caused by Dam C would be equivalent to the disruption to aquatic movement that was being consistently caused by the beaver dams.

Upon consideration the court finds that based on the evidence, reasonable minds could differ as to whether Smith complied with the seventh BMP as it relates to Dam C.

### 2. **Recapture**

The United States contends that even if Smith were to satisfy the forest road BMPs, his roads are recaptured thus requiring a permit. Recapture means that despite exemptions existing to the CWA permitting requirement (such as the "forest road" exemption), if dam/road construction and resulting discharges significantly alter the "use" of water **and** lead to the reduction or reach/circulation of such waters, then the exemptions do not apply.

According to the United States, there was no legally sufficient evidentiary basis at trial to support a finding that Dam C did not discernibly alter the flow/circulation of Dennis Creek, as the creek no longer exists as a flowing creek for hundreds of feet behind the dam, and permanently impounding the creek fundamentally altered the stream's essential nature, changing it from a relatively narrow, free-flowing water course into a broad 20 acre lake. Additionally, the United States argues that the undisputed evidence shows a conversion of substantial wetlands

areas above Dam C to non-wetland (change in use). The United States also argues that the significantly altered ecosystem constitutes a change in use.

In contrast, relying on Dr. Vittor's testimony, Smith contends that there was sufficient evidence for a reasonable jury to conclude that the "change in use" condition did not apply to Dam C. Specifically, Dr. Vittor testified that the area behind Dam C was still a wetlands area, albeit an emerging wetland and not a forested wetland.

Prior to trial, the parties submitted joint jury instructions that requested that "change of use" as used in the recapture provision be addressed by instructing the jury "converting (or changing) a Section 404 wetland to a non-wetland is a "change of use". This was presumably based on the United States' contention "that the impoundments (except any fringe areas where vegetation breaks the water surface) do not constitute wetlands." (Doc. 65 p. 10) The court gave these preliminary instructions.

During the course of the trial, it became evident that Smith would be able to put forth admissible evidence that the area was not a "non-wetland". Thereafter, the United States changed tack and wanted the court to expand the jury instruction on "change of use" so that they could argue that an altered ecosystem constituted a change of use. The court ultimately denied that request based primarily on a basic fairness argument, not based on a determination that a change of use could not be an altered ecosystem. Specifically, the parties had defined the issue for trial to be whether the area had changed in use from a wetland to a non-wetland. Smith, who had the burden of proof, was prepared to show that the impoundment was not a "non-wetland". To redefine the disputed issues of fact at the end of trial was not permissible under the court's order that adopted the parties' statement of disputed fact and stated that such

"shall constitute the final statement of issues involved in this action". (Doc. 68).

Upon consideration the court finds that reasonable minds could differ as to whether Smith was subject to recapture because there was sufficient evidence that there was not a change of use from a wetland to a non-wetland as it relates to Dam C.

**B.    Dam D**

   **1.    The Forest Road Exemption Best Management Practices ("BMPs")**

   **a.    Sixth BMP**

The sixth BMP require that in designing, constructing and maintaining roads, vegetative disturbance in the waters shall be kept to a minimum. The United States contends that Dam D violates this requirement because its design/size unnecessarily caused the destruction of trees and wetland vegetation in impounded areas and under the unnecessarily wide footprint of the dam. The United States also contends that the evidence at trial demonstrated that Dam D destroyed (and disturbed) a heavily vegetated area, ultimately impounding 1,497 linear feet of stream along with forested wetlands.   The United States adds that Smith's expert Dr. Vittor agreed that Dam D definitely killed "many many" trees.

In response, Smith relies on Dr. Vittor's testimony that the standard does not stipulate how much vegetation is "minimum," and that because the inundated areas were still wetlands and would become re-vegetated, the vegetation disturbance was minimal.   Dr. Vittor further testified that there was no evidence that Smith did not violate this BMP.

The problem for Smith is Dr. Vittor's opinion was not substantiated by any facts. Unlike the impoundment behind Dam C, there was no evidence that most of the vegetation had already been removed by hand or was affected by beaver impoundments, thus supporting a

finding of minimal disturbance of existing vegetation. The only evidence as it related to Dam D was that there were a lot of trees and now they are dead. Moreover, the fact that the area could possibly re-vegetate is not relevant to whether the vegetation was minimally disturbed when the road was constructed. Boiled down, Dr. Vittor's testimony is that there was minimum disturbance of vegetation because minimum is not defined and he thinks it was minimum because the trees can possibly grow back at some point.

Upon consideration the court finds that Smith failed to present sufficient evidence to sustain a finding that vegetative disturbance was kept to a minimum during the design, construction and maintenance of Dam D.

### b. Seventh BMP

The seventh BMP requires that a road crossing "shall not disrupt" the "movement" of aquatic life present in the water body. According to the United States, Smith's Dam D serves as a barrier to upstream movement of fish and other aquatic species.

In response, Smith relies on Dr. Vittor explanation that there were no migratory species in Dennis Creek and so the only applicable prong of this BMP is the "or other movement." BMP. Otherwise, Smith cites to no evidence in support of his contention that the movement of aquatic life was not disturbed.

Upon consideration the court finds that Smith failed to present sufficient evidence to sustain a finding that Dam D did not disturb the movement of aquatic life.

## III. Rule 59 Motion for New Trial[2]

A Rule 59 motion for new trial may be granted on all or some of the issues, and to any

---

[2] The motion for a new trial as to Dam D is mooted by the court's determination that the United States' motion for judgment as a matter of law as to Dam D is to be GRANTED.

party, "after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court." FED. R. CIV. P. 59(a)(1)(A). A motion for new trial may be granted under Rule 59 in the broad discretion of the trial court if "the verdict is against the clear weight of the evidence or will result in a miscarriage of justice, even though there may be substantial evidence which would prevent the direction of a verdict....Because it is critical that a judge does not merely substitute his judgment for that of the jury, 'new trials should not be granted on evidentiary grounds unless, at a minimum, the verdict is against the great-not merely the greater-weight of the evidence.'" Lipphardt v. Durango Steakhouse of Brandon, Inc., 267 F.3d 1183 (11th Cir. 2001). It is not a forum to relitigate old matters or to present arguments or evidence that could have been presented at trial. Michael Linet, Inc. v. Village of Wellington, Fla., 408 F.3d 757, 763 (11th Cir. 2005). As explained by the Eleventh Circuit in Auto–Owners Ins. Co. v. Southeast Floating Docks, Inc., 571 F.3d 1143, 1145 (11th Cir. 2009):

> While it is within a district court's discretion to grant a new trial if it finds a jury's "verdict is against the great, not merely the greater weight of the evidence," our application of this more rigorous standard of review ensures the district court does not simply substitute its own credibility choices and inferences for the reasonable choices and inferences made by the jury .... If the jury's verdict is supported by the evidence, then it is immaterial that we or the district judge would have arrived at the same verdict because it is not our place to substitute our judgment for that of the jury....

District courts are entrusted with broad discretion in determining whether a new trial is warranted in a particular case. Hessen for Use and Benefit of Allstate Ins. Co. v. Jaguar Cars, Inc., 915 F.2d 641, 644 (11th Cir. 1990). Nevertheless, "the remedy of granting a motion for new trial 'is sparingly used.'" Phillips v. Irvin, 2007 WL 2570756, *6 (S.D. Ala. Aug. 30, 2007). "Although a comprehensive list of the grounds for granting a new trial is elusive, the Supreme Court has held that a motion for new trial may rest on the fact that 'the verdict is against the

11

weight of the evidence, that damages are excessive, or that, for other reasons, the trial was not fair to the party moving; and may raise questions of law arising out of alleged substantial errors in admission or rejection of evidence or instructions to the jury.'" Montgomery Ward & Co. v. Duncan, 311 U.S. 243, 251 (1940). Further, "[w]hen a new trial is granted on the basis that the verdict is against the weight of the evidence our review is particularly stringent to protect the litigant's right to a jury trial." Hewitt v. B.F. Goodrich Co., 732 F.2d 1554, 1556 (11th Cir. 1984). Finally, the Court notes that its inquiry is limited at this point, as it is the province of the jury to determine from the evidence what the facts are and then to apply the law, as given by the Court, to those facts; it is not the province of this Court to conduct fact-finding missions, either during trial or during review of post-trial motions.

**First**, the United States generally asserts that the jury's finding of no liability for Dam C was "against the great weight of evidence" due to Smith's multiple failures to carry his burden of proof at trial and based on the legal insufficiency of the evidence supporting the jury's verdict. (Doc. 100 at 29). The United States does not specify Smith's "multiple failures", but the court presumes its arguments would be the same as those presented in the 50(b) motion.

In response, Smith asserts that the trial was one of "battling experts" who interpreted the guidelines and applied them to the facts. From this Smith argues that the jury was allowed to consider the credibility of the witnesses and any possible bias when testifying and the jury agreed with Smith's interpretation and application of the guidelines for Dam C. Thus, Smith contends there was sufficient evidence to support the jury's verdict.

In considering the United States's contention in regard to the weight of the evidence presented at trial, "[t]he trial judge's discretion to set aside a jury verdict based on the great

weight of the evidence is very narrow" and is limited to "protect[ing] against manifest injustice in the jury's verdict." Hewitt v. B.F. Goodrich Co., 732 F.2d 1554, 1556 (11th Cir. 1984).

The Court has independently weighed the evidence favoring the jury verdict against the evidence favoring the United States and has refrained from substituting its own credibility choices and inferences for the reasonable credibility choices and inferences made by the jury. After such review, the court determines that the United States has failed to establish that the jury's verdict was against "the great weight of the evidence" for Dam C.

**Second**, the United States contends that it was substantially and unfairly prejudiced by "beaver" evidentiary rulings (the Court's inclusion of beaver evidence at trial via the denial of its related pretrial motion in limine (Docs. 72, 81, 85)) and the Court's failure to issue a limiting jury instruction as to this evidence at trial. In sum, the United States asserts that the pre-dam condition of the site (including the existence of a shallow water impoundment) had no evidentiary bearing on any of the BMPs at issue in this case, or on the issue of recapture.

"Courts do not grant new trials unless it is reasonably clear that prejudicial error has crept into the record or that substantial justice has not been done, and the burden of showing harmful error rests on the party seeking the new trial." Sibley v. Lemaire, 184 F.3d 481, 487 (5th Cir. 1999). It is the moving party's burden to show that any "errors and defects" at trial affected its "substantial rights." FED.R.CIV.P. 61; Cabral v. U.S. Dep't of Justice, 587 F.3d 13, 22 (1st Cir. 2009). Moreover, the admissibility of evidence is committed to the broad discretion of the trial court. Walker v. NationsBank of Fla, 53 F.3d 1548, 1554 (11th Cir. 1995). A new trial is warranted for an evidentiary error "only where the error has caused substantial prejudice to the affected party." Peat, Inc. v. Vanguard Research, Inc., 378 F.3d 1154, 1162 (11th Cir. 2004)

(citations omitted). To determine whether improperly admitted evidence affected the verdict, courts consider the number of errors, the closeness of the factual dispute, the prejudicial effect of the evidence, whether counsel intentionally elicited the evidence or focused on the evidence during the trial, and whether the court gave any cautionary or limiting instructions. Id.

District courts enjoy wide discretion as to the style and wording employed in jury instructions, provided they are correct statements of the law. United States v. Lebowitz, 676 F.3d 1000, 1014 (11th Cir. 2012); Goldsmith v. Bagby Elevator Co., 513 F.3d 1261, 1276 (11th Cir. 2008). Additionally, "the trial court's refusal to give a requested instruction is not error where the substance of that proposed instruction was covered by another instruction which was given." Merchants Nat. Bank of Mobile v. United States, 878 F.2d 1382, 1388 (11th Cir. 1989). Moreover, even if a refused instruction a) is not adequately covered by the existing charge, b) is a correct statement of law, and c) deals with an issue that is properly before the jury, "there still must be a showing of prejudicial harm as a result of the instruction not being given before the judgment will be disturbed." Id. at 1389. Further, a litigant is entitled to have the jury instructed on its theory of the case, so long as there was competent evidence to support the theory and the instruction is properly requested. Ad–Vantage Tel. Directory Consultants v. GTE Directories Corp., 849 F.2d 1336, 1349 (11th Cir. 1987). However, the Court need not give the requested instruction in the exact language requested. Id. If the jury charge, as a whole, correctly instructs the jury on the law, no reversible error has been committed, even if a portion of the charge is technically imperfect. Miller v. Universal City Studios, Inc., 650 F.2d 1365, 1372 (5th Cir. Jul.23, 1981). So long as the instructions accurately reflect the law, the court has wide discretion as to the style and wording. Bateman v. Mnemonics, Inc., 79 F.3d

14

1532, 1543 (11th Cir. 1996).³  See also generally Phillips v. Irvin, 2007 WL 2570756, *9-10 (S.D. Ala. Aug. 30, 2007) (explaining new trial requests based on erroneous jury instructions).

During the second day of trial, the United States requested a limiting instruction to the jury that the "beaver" evidence had no relevance to the issue of Smith's BMP compliance:

> …the fundamental question at this point..is what does a jury make of that evidence and what is it relevant to. Our contention is…there is no relevance whatsoever to the best management practices that apply to Mr. Smith's road….
> ***
> …[t]he bottom line is the best management practices must be applied to the dams at issue. It's misleading to say that there's any comparison between the dams and the beaver dams. BMPs don't apply to beaver dams…we're requesting … the Court give a limiting or explanatory instruction to the jury at this point in the case that … – **the evidence regarding the beavers is relevant solely to the issue of recapture and not to whether the dams or the crossings apply to the BMPs**.

(Doc. 90 at 151-153 (emphasis added)).  The Court denied the request, stating that the United States could argue such in closing.  (Id. at 153).

The United States asserts that Smith presented trial testimony about beavers in connection with this defense for 2 of the BMPs to try to justify the use of a stand pipe⁴ at Dam C, and to excuse the dam functioning as a fish barrier by claiming that beaver dams similarly disrupt and prevent upstream movement of aquatic species.  The United States argues that nothing in the BMPs provides for authorizations or actions in light of beaver activity (*i.e.*, to be

---

3  The Eleventh Circuit explained:

So long as the instructions accurately reflect the law, the trial judge is given wide discretion as to the style and wording employed in the instructions. On appeal, we examine whether the jury charges, considered as a whole, sufficiently instructed the jury so that the jurors understood the issues and were not misled. Under this standard, if the jury charge as a whole correctly instructs the jury, even if it is technically imperfect, no reversible error has been committed. We must reverse an erroneous instruction, however, if we are left with a substantial and ineradicable doubt as to whether the jury was properly guided in its deliberations.

Bateman v. Mnemonics, Inc., 79 F.3d 1532, 1543 (11th Cir.1996).

4  Described to the jury as a vertical pipe that connects to a culvert where you can control the level of water.  (Tr. at 23).

taken to repel beavers), yet the Court declined to give the jury the limiting instruction it requested to clarify that the beaver evidence was *irrelevant* to the issue of BMP compliance. From this, the United States claims prejudice, as the beaver evidence "infected" the jury's consideration of the issue of Smith's BMP compliance.

The court disagrees with the United States' premise that the beaver evidence was irrelevant. The "beaver" evidence was relevant to Dam C to assess the impact of the construction of the dam as it related to disruption of the movement of aquatic species and the disruption of vegetation. Specifically, the pre-dam construction existence of an impoundment (such as the beaver dam) was relevant to the issue of whether the construction of Dam C caused further disruption. Likewise, the pre-construction existence of any impoundment (including that of a beaver) was relevant to the issue of recapture to determine whether the "flow/circulation of waters was impaired" or the "reach of such waters reduced" to assess whether there was a "change in use" from a wetland to a non-wetland.

In sum, a limiting jury instruction in the manner requested by the United States (that beaver evidence is relevant *only* to the issue of recapture and *not* to the BMPs) would have been inconsistent with what the evidence and testimony revealed at trial.

**Third**, the United States argues that the Court erred in denying its motion in limine requesting that Smith be precluded from presenting evidence based on an improper definition of "wetlands", resulting in Dr. Vittor testifying in contravention to the CWA standards and regulations. The United States' companion argument is that the court erred in the final jury instructions by failing to include an expanded definition of "wetlands".

As previously explained, at the commencement of trial, the Court preliminarily charged

the jury *with the instruction requested by the United States* for recapture: "[a]ccording to federal regulations, converting (or changing) a Section 404 wetland to a non-wetland is a 'change in use' of an area of waters of the United States; and where the proposed discharge will result in significant discernible alterations to flow or circulation, the presumption is that flow or circulation may be impaired by such alteration." Trial was conducted with that instruction as the jury's guide. As indicated to counsel during a chambers' charge conference, amending the jury instruction on the "change in use" at that juncture would have been confusing to the jury and potentially prejudicial to Smith's counsel given the circumstances of this particular case and the stage of litigation.[5]

As to the arguement that that the court allowed Dr. Vittor to testify in contravention of the CWA's definition of wetlands, this simply is not true. The parties agreed that the 1987 Wetlands Delineation Manual guided the definition of "wetlands", the Manual was introduced into evidence and shown to the jury. Each side's experts (Drs. Vittor and Kruzcynski) testified about the Manual and provide their respective interpretations/conclusions, and were then cross-examined by each side. Dr. Vittor's testimony was not contrary to the CWA standard or the 1987 Manual, but rather, only contrary to how the United States wished for wetlands to be defined for the jury.

**Fourth**, the United States contends that Smith's counsel "tainted the jury" with

---

5 The United States stated in its opening: "[a] wetlands has a specific statutory definition in the statute. There's only one definition for a wetland[]" (Doc. 89 at 44 (Tr. at 44)), but then *after the jury had been preliminary charged on the wetlands definition it submitted to the Court*, argued to the Court that the definition in the <u>Banks</u> case (prevalence of hydrophytic plants, hydrological condition suited to such plants, and the presence of hydric soils) should apply instead (Doc. 90 at 153-159). Subsequently, the Court addressed the wetlands definition with counsel and heard further argument on the issue. (Doc. 90 at 293-297; Doc. 91 at 275). Moreover, the Court held a jury charge conference with counsel, at which time it again addressed the definition of "change in use" which contained the only reference to "wetlands" in the charges; at that time, it was noted that the United States's definition, which it had submitted in proposed jury charges, had already been used throughout the case, such that to change the definition at the end of trial would be confusing.

"improper and exaggerated references" to a potential penalty as well as improperly appealed for jury nullification by injecting inflammatory and anti-United States rhetoric in his opening and closing arguments. (Tr. at 30, 33, 45, 52, 79, 84, 89). Specifically, the United States asserts that despite bifurcation, Smith's counsel improperly injected the penalty issue into the liability phase by stating that the United States was seeking a "million-dollar fine" or "million-dollar mitigation cost" against Smith. (Tr. at 89-90). According to the United States, this "loaded remark" invited the jury to ignore the liability evidence, to ensure that Smith would not have to face such a large fine or penalty.

In contrast, Smith contends that the United States opened the door to address the issue during examination of witnesses -- that his counsel only mentioned the claimed penalty on re-direct after the United States had invoked questions about the value of the property (to imply that the entire project was simply an asset enhancement to Smith's financial worth) during trial to confuse and prejudice Smith before the jury. Additionally, as to Smith's counsel's remarks in closing, Smith contends they were not outside the issues of the case or prejudicial to the United States' substantive rights – adding that the United States failed to timely object to same and only did so, tardily, in the present motion for new trial. (Doc. 101 at 15-16). As such, the Court was not allowed an opportunity to rule on the remarks within the context of the argument, Allstate Ins. Co. v. James, 845 F.2d 315, 318 (11th Cir. 1988) (providing that an appellate court will look to the entire argument, the context of the remarks, the objection raised, and the curative instruction to determine whether the remarks "impair gravely the calm and dispassionate consideration of the case by the jury[]"), and regardless, the Court's jury instructions sufficiently addressed comments by counsel.

Jury nullification is essentially when counsel encourages jurors to ignore the court's instructions and apply the law at their caprice. See, e.g., U.S. v. Trujillo, 714 F.2d 102, 106 (11th Cir. 1983). The Court finds that Smith's counsel did not request jury nullification in its opening and closing statements. However, Smith's counsel did make an indirect plea for sympathy for Smith's eight- year ordeal. As to these comments, the jury was instructed that: "[t]he fact that a governmental entity or agency is involved as a party must not affect your decision in any way. A governmental agency and all other persons stand equal before the law and must be dealt with as equals in a court of justice." (Id. at 2). The jury was also instructed that the lawyers' statements and arguments are not evidence: "During the trial, you'll hear certain things that are not evidence and you must not consider them. First, the lawyers' statements and arguments aren't evidence. *In their opening statements and closing arguments, the lawyers will discuss the case.* Their remarks may help you follow each side's arguments and presentation of evidence. *But the remarks themselves aren't evidence and shouldn't play a role in your deliberations*." (Doc. 94-4 at 2 (Preliminary Instructions to the Jury) (emphasis added)). Such pleas for sympathy were also addressed in the instructions as the jury was charged that: "[y]our decision must be based only on the evidence presented here. *You must not be influenced in any way by either sympathy for or prejudice against anyone.* Our system of justice is counting on you to render a fair decision based on the evidence, not based on feelings, prejudices, fears or stereotypes." (Doc. 94-5 at 1 (Final Instructions to the Jury) (emphasis added)). As such, the jury was charged as to how to consider any allegedly "loaded" remarks or comments.

The United States also alleges that the Court instructed counsel to not make objections during opening and closing arguments. (Doc. 100 at 32) The Court has reviewed the trial

19

transcript and notes that it did not instruct counsel that it would prohibit objections in opening and closing statements.[6]

Based on the foregoing, the Court finds that the United States has failed to demonstrate that the jury's verdict as to Dam C was rendered against the great weight of the evidence, that a miscarriage of justice resulted from the jury's verdict, or that this Court's procedural and evidentiary rulings (including its jury instructions, exclusion of evidence, and other rulings) affected the its substantial rights or otherwise caused injustice or prejudice to the United States. Thus, the United States' request for a new trial as to Dam C (Doc. 100) is **DENIED.**

IV. <u>Conclusion</u>

Based on the foregoing, it is **ORDERED** that the United States' Rule 50(b) Renewed Motion for Judgment as a Matter of Law is **GRANTED** as to Dam D and **DENIED** as to Dam C. The United States' Rule 59 Motion for New Trial (Doc. 100) is **DENIED.**

**DONE** and **ORDERED** this the 9th day of **May 2014.**

     _s/ Kristi K. DuBose_
     **KRISTI K. DuBOSE**
     **UNITED STATES DISTRICT JUDGE**

---

[6] While not found in the transcript, it is the practice of the undersigned to discourage, but not prohibit, unnecessary interruptions of opening and closing arguments.