IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,  ) | |
| ) | |
| Plaintiff,          ) | Civil Action No. 12-00498-KD-C |
| ) | |
| v.                ) | |
| ) | |
| HAMILTON SMITH,           ) | |
| ) | |
| Defendant.         ) | |
| _____) | |

## PLAINTIFF UNITED STATES' REPLY BRIEF IN SUPPORT OF REQUEST FOR INJUNCTIVE RELIEF IN THE FORM OF TEMPORAL MITIGATION

The Clean Water Act ("CWA") vests the Court with ample authority to grant injunctive relief in the form of temporal mitigation in this case.  See Doc. 137 at 1-4 (United States' Initial Brief, dated June 17, 2014).  Defendant's opposition brief, see Doc. 140 ("Response"), sidestepped that central legal issue.  Thus, there can be no dispute that the Court possesses the legal authority to require Defendant to mitigate the temporal losses caused by his four violations.

Defendant nevertheless urges the Court to completely reject the United States' claim for temporal mitigation based on two arguments: (1) his renewed objection to considering any evidence relating to temporal mitigation, and (2) the alleged lack of precedent for granting temporal mitigation in what Defendant views as the precise circumstances presented here. Defendant's arguments against temporal mitigation are meritless and contrary to the CWA's purposes to protect and maintain the quality of this Nation's waters.

The Court should exercise its equitable authority to require Defendant to provide substantial temporal mitigation to remedy the environmental harm -- the temporal losses of wetland and stream functions -- that have resulted from his four dams, and will continue until the

forested wetlands along Dennis Creek and its tributaries are restored at the Site.  As even

Defendant Smith concedes, temporal mitigation is not a "new or radical concept."  Response at

5.  Such relief is firmly rooted in the statutory and regulatory provisions of the CWA.

Defendant's attempt to narrowly parse the CWA regulations is unpersuasive.  Nor can he

distinguish away the enforcement cases where the United States obtained both restoration and

temporal mitigation. His Response reflects an incorrect and self-serving view of the law that is at

odds with the CWA's purposes.  The CWA is a remedial statute designed broadly to protect the

environment.  Defendant can point to no case where temporal mitigation was found to be

inappropriate against an adjudicated CWA violator.  Here, Defendant offers no valid reason to

depart from standard procedures to compensate the American public for temporal losses at the

Site.  See Tr. Phase 2, Day 1, at 142 (Kruczynski) ("requiring temporal mitigation is a standard

operating procedure to offset the losses that have occurred in waters of the United States for the

period of time that the fill and/or impoundment in this case have been in place").

        Further, Defendant was provided ample notice throughout this litigation that the United

States was seeking compensatory mitigation, including mitigation for temporal losses.  As

explained in the United States' Opposition to Defendant's Motion in Limine Regarding

Compensatory Mitigation (Doc. 122, at pages 1-3), the United States properly disclosed that it

was seeking mitigation, including for temporal impacts, both before and after filing the

Complaint, and relevant guidance materials relating to temporal mitigation also are publicly

available on the Mobile District's website.  Tr. Phase 2, Day 1, at 146-47 (Kruczynski).  In

addition, the United States provided to the Defendant a mitigation worksheet very similar to the

one presented as United States Exhibit 211 long before trial, and has been discussing the need for

mitigation with Defendant for years.  See Tr. Phase 2, Day 1, at 238-241 (Wylie).   Defendant's

consultant, Dr. Vittor, was apprised of and familiar with the CWA's mitigation requirements as well as prevailing mitigation bank credit costs in the greater Mobile area as a result of his work in this and other cases.  Tr. Phase 2, Day 1, at 240-241 (Wylie); Tr. Phase 2, Day 2, at 215 (Vittor) ("we call them [mitigation banks] probably once every couple of weeks to get quotes for clients on mitigation.").  Thus, Defendant's claim to have been surprised or prejudiced by the United States' claim for temporal mitigation is contravened by the record.

The Court has ample basis to require mitigation to address the environmental harms caused by discharges of dredged or fill material into waters of the United States.  For example, as noted in the United States' Initial Brief, mitigation regulations governing the CWA Section 404 permitting process specifically require that "the amount of required compensatory mitigation must be, to the extent practicable, sufficient to replace lost aquatic resource functions."  33 C.F.R. § 332.3(f)(1) and 40 C.F.R. § 232.93(f)(1).  The United States' request for temporal mitigation in this case is necessary to meet this objective, and is consistent with the obligations that would have been imposed on Defendant had he sought permit authorization for the illegal, unpermitted discharges that have remained in place for approximately 12 years.  The Corps of Engineers' and EPA's regulations further provide for compensation for temporal impacts.  33 C.F.R. § 332.3(f)(2); 40 C.F.R. § 230.93(f)(2).  Defendant's consultant, Dr. Vittor, testified that he himself had represented a landowner who obtained an after-the-fact permit from the Corps of Engineers in order to resolve a violation involving the illegal construction of a lake, and the landowner provided both temporal and regular mitigation for the impacts of the lake.  Tr. Phase 2, Day 2, at 233-34.  Further, the regulations specifically note that mitigation banks may be used to satisfy requirements arising out of an enforcement action.  40 C.F.R. § 230.93(g).  Denying temporal mitigation in enforcement actions, as Defendant urges here, would create a perverse

incentive for dischargers to avoid the statutory permit process, degrading the value of both pre-discharge and after-the-fact permits, and potentially place violators in a better position than those who comply with the law.

Defendant's opposition fails to identify any material error in the United States' method of calculating temporal mitigation credits.  The United States' expert witnesses, Dr. Kruczynski and Mary Sitton, provided clear evidence regarding the nature and quality of streams and wetlands that were harmed by the violations, and the linear feet of stream and acreage of wetland affected over a 12-year period.  Given the Court's broad equitable powers, the United States' proof at trial of the nature and extent of environmental harm is more than sufficient to support an order that the Defendant provide temporal mitigation in the amount requested.

Contrary to Defendant's assertions, no expert testimony from the United States as to the precise amount of temporal mitigation or even a calculation was required.[1]  For example, in United States v. Feinstein Family Partnership, No. 2:96-CV-00232, (M.D. Fla. filed June 26, 1996), Doc. 207 (Oct. 30, 1998 Mem. Op., at 28-33), the court simply ordered the defendant to prepare and submit a mitigation plan and submit the plan for review by the United States, allowing the United States to either identify its objections to defendant's plan or present an alternative mitigation plan.  The court in that case stated that its "exercise of this equitable discretion is not contingent upon the Government's presentation of a mitigation plan, for the Court may order a Defendant found liable under the Clean Water Act to come up with its own mitigation plan."  Feinstein Family Partnership, at 29 (citations omitted).   Indeed, in the context

---

[1] As explained below, and confirmed at the Phase II trial, the substantive inputs supporting the United States' claim for temporal mitigation are derived from the opinions of Dr. Kruczynski and Ms. Sitton and were contained in their Rule 26 reports.  Mr. Wylie's testimony regarding the Corps' guidance and how the inputs would be reflected on the Corps' standardized mitigation form falls within his normal job responsibilities and duties at EPA and did not require a separate Rule 26 expert report.

of permit applications, the regulations specifically place the obligation to develop a draft mitigation plan on the discharger.  33 C.F.R. § 332.4(c)(1); 40 C.F.R. § 230.94(c)(1).

Thus, the United States could have simply proven the violations and presented evidence of the nature, extent, and duration of impacts to support a demand for mitigation.  Such evidence was contained in the Rule 26 expert reports provided to Defendant during discovery and presented at trial.  The United States presented additional evidence regarding the applicable mitigation guidance in the Mobile District to assist the Court in fashioning appropriate relief.  Defendant's renewal of his objection to Mr. Wylie's testimony is misplaced because the underlying determination of environmental impacts was supported by expert testimony, i.e., Dr. Kruczynski's and Ms. Sitton's assessment of stream length and wetland acreage impacts, wetland and stream quality, and lost environmental functions.  Mr. Wylie's discussion of publicly available Mobile District Corps of Engineers policy documents was not expert testimony that required a prior Rule 26 report.

Defendant relies on the definition of "temporal loss" in the mitigation regulations to argue that temporal mitigation is not appropriate when a site is being restored.  The regulations define temporal loss as the "time lag between the loss of aquatic resource functions caused by permitted impacts and the replacement of aquatic resource functions at the compensatory mitigation site."  33 C.F.R. §332.2; 40 C.F.R. § 230.92.  However, the temporal loss of environmental functions where a site is restored after a 12 year violation and where an after-the-fact permit is obtained after a 12 year violation is **exactly the same**.  The regulatory language defining temporal losses may have been drafted with the permitting context in mind, but there is no reason to interpret the language as constraining a Court's authority to fashion appropriate equitable relief in a litigated enforcement case.  Rather, the principles underlying the regulations

5

*support* such relief, and the Court's equitable power to fashion remedial relief to fully address environmental harm is clear from court precedent.  United States Public Interest Research Group v. Atlantic Salmon of Maine, LLC, 339 F.3d 23, 31-33 (1st Cir. 2003);  United States v. Deaton, 332 F.3d 698, 713-14 (4th Cir. 2003).

Defendant, at page 6 of his Response, complains that the United States presented a new calculation of mitigation credits in its opening brief addressing temporal mitigation.  But the only "new" aspect was that United States adjusted its mitigation request downward, to the benefit of Defendant, to reflect the United States' understanding that the violation sites will be restored.

Defendant essentially argues that mitigation for temporal impacts is never appropriate where the environment is ultimately being restored.  But this approach completely fails to compensate for the period of time that wetland and stream functions have been lost, and is contrary to the CWA's "no net loss" policy.  The United States' request that Defendant purchase mitigation credits for the temporal losses that his four CWA violations caused is both reasonable and entirely appropriate under the CWA.

For the foregoing reasons, the United States respectfully requests that the Court grant the Government's request and issue an Order requiring the Defendant to mitigate for temporal impacts by purchasing mitigation credits as outlined in the United States' Initial Brief.

Dated: July 8, 2014                    Respectfully submitted,

                                             SAM HIRSCH
                                             Acting Assistant Attorney General
                                             Environment & Natural Resources Division

By:    */s/ Michael C. Augustini*
                                             MARTIN F. MCDERMOTT (IL Bar 6183307)
                                             MICHAEL C. AUGUSTINI (DC Bar 452526)
                                             United States Department of Justice
                                             Environment & Natural Resources Division
                                             Environmental Defense Section

P.O. Box 7611
Washington, D.C. 20044-7611
Tel: (202) 514-4122 (McDermott)
Tel: (202) 616-6519 (Augustini)
Fax: (202) 514-8865
Email: martin.mcdermott@usdoj.gov
Email: michael.augustini@usdoj.gov

KENYEN R. BROWN
United States Attorney
Southern District of Alabama

STEVE BUTLER
First Assistant United States Attorney
Chief, Civil Division
Office of the United States Attorney
Southern District of Alabama
United States Attorney's Office
63 South Royal Street, Suite 600
Mobile, AL 36602

COUNSEL FOR PLAINTIFF UNITED STATES OF
AMERICA

OF COUNSEL:

PAUL SCHWARTZ.
Associate Regional Counsel
United States Environmental Protection Agency, Region 4
61 Forsyth Street, S.W.
Atlanta, Georgia  30303
(404) 562-9576

7

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 8, 2014, I served the foregoing reply brief through the

Court's Electronic Filing System (ECF) on the following attorney representing Defendant

Hamilton Smith: Mark D. Ryan, Post Office Box 1000, Bay Minette, Alabama 36507.


By:     <u>/s/ Michael C. Augustini</u>
        United States Department of Justice