IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 12-00498-KD-C |
| | ) | |
| v. | ) | |
| | ) | |
| HAMILTON SMITH, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

### PLAINTIFF UNITED STATES OF AMERICA'S MOTION FOR CLARIFICATION AND PARTIAL RECONSIDERATION OF ORDER

Plaintiff United States of America, on behalf of the Environmental Protection Agency ("EPA"), hereby moves for clarification and partial reconsideration of certain limited aspects of the Court's Order dated July 24, 2014 (Doc. 145) regarding the remedy for Defendant Smith's Clean Water Act violations. See Fed. R. Civ. P. 7(b) and 60(b)(1), (6).[1]  As a matter of fairness and efficiency, federal district courts clearly may clarify ambiguities or mistakes in orders. See Gougler v. Sirius Prods., Inc., 370 F. Supp. 2d 1185, 1189-90 (S.D. Ala. 2005) (granting a motion for reconsideration); Go Computer, Inc. v. Microsoft Corp., 508 F.3d 170, 177 (4th Cir. 2007) ("it is inconceivable that district courts would not possess the authority to correct an error . . ."); Lane v. Central Ala. Cmty. College, No. CV-11-BE-0883-KOB, 2012 WL 5873351, at *1 (N.D. Ala. Nov. 20, 2012) (granting reconsideration to correct an error in a dispositive ruling). As elaborated below, this Court should clarify its remedy decision in certain respects and correct the errors identified in this motion.

---

[1] The Court has not entered a final judgment in this case. Thus, Rule 59(e), which addresses motions to alter or amend a judgment, does not appear to apply.

**I.     EPA SHOULD BE ALLOWED TO REVIEW AND COMMENT ON
DEFENDANT'S RESTORATION PLAN AND MONITOR COMPLIANCE**

The Court issued an order largely approving the United States' proposed restoration plan for the Defendant's Clean Water Act violations, Dams A, B, D, and E. See Order at 6 (agreeing that "restoration is a *foremost* consideration"), 9 (finding that "entry of a restoration plan and temporary restorative injunction is proper as restoration of the Smith property is necessary and justified"), 10 (adopting the United States' amended restoration plan as revised by the Court). One of the Court's revisions requires Defendant to pay for a Court consultant to monitor Defendant's compliance with the restoration order. See Order at 29 ("Smith is **ORDERED** to pay, in annual installments, the cost of the Court's consultant, who will be appointed to monitor compliance with the amended restoration plan (as described in Attachment A"). In the revised restoration plan (Doc. 145-1), the Court further established a role for the monitor, generally substituting references to "EPA" in the United States' proposed plan with the phrase "Court-appointed monitor" in the amended restoration plan. As written, however, the revised restoration plan and implementing order leave EPA's role unclear. For example, there is no explicit provision allowing for the United States' input on important restoration decisions that will be made, such as whether the creek channels need to be excavated due to siltation or Defendant's earthmoving activities. Accordingly, the United States requests that Court clarify that EPA shall receive all submissions to the Court-appointed consultant and may review and comment on Defendant's restoration-related submissions and activities, and participate in any activities or further proceedings conducted by the Court monitor.

Federal courts routinely allow EPA to play an active role in assessing and monitoring a violator's restoration activities and ultimate compliance in Clean Water Act cases. See, e.g., Borden Ranch P'ship v. United States Army Corps of Eng'rs, No. CIV S97-0858 GEBJFM,

2

1999 WL 1797329, at *21 (E.D. Cal. Nov. 8, 1999) (requiring EPA approval of defendant's restoration plan and site selection), aff'd in relevant part, 261 F.3d 810 (9th Cir. 2001); United States v. Feinstein Family P'ship, No. 2:96-CV-232, Dkt. 207, at 30-34 (M.D. Fla. Oct. 30, 1998) (ordering the CWA violator to propose a plan for compensatory mitigation and providing for EPA's review of the plan); United States v. Key West Towers, Inc., 720 F. Supp. 963, 965 (S.D. Fla. 1989) (allowing the government to review restoration reports and conduct a site inspection to assist in determining compliance with the court's judgment).  The United States is unaware of any case in which the government has obtained a judgment of CWA liability and not been permitted to provide input and to monitor the violator's subsequent efforts to comply with court-ordered restoration.  In fact, Defendant's environmental consultant – Dr. Vittor – testified that government input, vetting, and monitoring of restoration activities is a standard practice and one to which he made no objection in the context of this case.  See Phase II Trial Tr. Day 2 (June 3, 2014), at 255 line 4 to 256 line 7 (hereafter "Day 2 Tr.").

Accordingly, the Court should clarify that the United States has the right to receive the Defendant's data and submissions to the Court-appointed monitor, confirm that EPA and/or the Mobile District of the Corps may participate in site inspections to observe and monitor restoration activities, and indicate that the United States may provide comments and have an opportunity to be heard prior to any decisions regarding Defendant's implementation of and compliance with the Court-ordered restoration requirements.

## II. THE COURT SHOULD CORRECT ITS STATEMENTS IN THE ORDER REGARDING THE CIVIL PENALTY SOUGHT BY THE UNITED STATES

In several places in the Order, the Court stated that the United States sought a civil penalty of $1.5 million in this case.  See Order at 5 ("The Government seeks civil penalties against Smith in the amount of $1,500,000 for the Dams/roads A, B, D and E, pursuant to 33

U.S.C. 1319(d), depending on the other relief being ordered in full by the Court."); 15-16 ("Further complicating both the Court and Smith's understanding of the civil penalties sought, is that on the first day of the Phase II trial on June 2, 2014, the Government asserted -- *for the first time and without explanation or evidence as to how that number was calculated* -- that it seeks **$1,500,000** as the civil penalty, *a figure five (5) times that demanded just a few weeks earlier*.") (emphasis in original); 24-25 ("It is the undersigned's opinion that the Government's request lacks objective perspective on the seriousness of this particular violation.  To suggest that the Court penalize Smith to this extent merits no further discussion."); and 29 ("the Government's request for a $1,500,000 civil penalty is DENIED as to the amount…").  The Court's statements should be corrected because the United States did not in fact make a claim for a civil penalty of $1.5 million in this case.

     The United States set forth the relevant statutory factors for civil penalties, see 33 U.S.C. § 1319(d), and provided a two-page discussion of applicable case law regarding penalties in the Joint Pretrial Document for the Phase II trial.  See Doc. 107 at 5-7, 12 (explaining that civil penalties are not "damages").[2]  As the Court noted, see Order at 15, the United States filed a Supplement To The Pretrial Document several weeks prior to the Phase II trial specifying the amount of civil penalties that the United States was seeking, stating that "In addition to full restoration and full mitigation for temporal losses, the United States seeks an order requiring Defendant to pay civil penalties in the amount of $300,000 for the four dams."  See Doc 114 at 2.

---

[2] The United States disclosed and Defendant was aware from the outset of the case that the United States was seeking a civil penalty pursuant to 33 U.S.C. § 1319(d) in addition to injunctive relief.  See, e.g., Joint Report on Parties' Planning Meeting, Doc. 7 at 4, 7.  The Joint Report stated that "discovery will be needed on several subjects relating to . . . the remedies required for proper restoration and mitigation, and the amount of the civil penalty . . ."  Id. at 6.  But Defendant never served any discovery requests seeking information about how much of a civil penalty the United States was claiming or why.  Nor did Defendant serve any document requests or interrogatories regarding any other aspect of the United States' claim.

The United States' Supplement therefore provided notice that the United States was requesting a $300,000 civil penalty in addition to injunctive relief (restoration and mitigation).[3]

Contrary to the suggestion in the Court's Order at 15-16, the United States *did not* increase its civil penalty claim from $300,000 to $1.5 million on the first day of the Phase II trial. In his opening statement, counsel for the United States clearly stated: "As to the civil penalty amount we stated in our supplement, we think a penalty of $300,000 is appropriate given the violations." See Phase II Trial Tr. Day 1 (June 2, 2014), at 16, lines 6-8 (hereafter ("Day 1 Tr.")). Consistent with the pre-trial Supplement and counsel's opening statement, Mr. Wylie from EPA testified during his direct examination that he understood the United States was asking for a $300,000 penalty and confirmed that he believed that $300,000 was an "appropriate" amount, given the nature and date of the four violations, the extent of impacts to protected streams and wetlands at the Site, and other facts in the case. Id. at 247-48; see also Day 2 Tr. at 84 (Mr. Wylie testifying on redirect that, in light of Defendant's substantial net worth, Mr. Smith "does not have an inability to pay the $300,000 penalty to the United States").

It is clear from the trial transcript that Defendant Smith understood the United States' claim in this respect and argued against a $300,000 civil penalty. For example, defense counsel argued in his opening (in response to the United States' presentation) that a reasonable penalty range would be $10,000 to $15,000, not "anywhere near $300,000." Day 1 Tr. at 27, lines 1-6. During cross-examination, defense counsel questioned Mr. Wylie regarding the basis for the United States' "requested penalty of $300,000." Day 2 Tr. at 2, lines 13-14; 3, lines 3-4, 7-8 &

---

[3] The Court's decision suggests that the United States was ordered at the pretrial conference to "explain how it arrived" at its civil penalty figure in the supplement, Order at 15, but what the Court actually requested was just the figures without argument. See Hearing Transcript, dated May 15, 2014, at 6-7 (THE COURT: "Just numbers. Basically, you're giving me notice of that and you're giving the defendant notice of that before we actually get to trial.").

16-17. And as part of the Defendant's case, Dr. Vittor took the witness stand to give his opinion on the United States' claim for "a $300,000 civil penalty." Id. at 181, lines 18-19.

In short, there is nothing in the trial record, or elsewhere, to support the Court's statements that the United States sought a $1.5 million civil penalty at the Phase II trial.

It is possible that the Court confused the United States' $300,000 claim for civil penalty with the United States' contention that Defendant could *afford* to pay as much as $1.5 million for restoration, compensatory mitigation, *and* a civil penalty based on the Defendant's substantial net worth and assets. But any conflation of these two figures would be erroneous.

First, claims for equitable relief, such as the United States' request for restoration and compensatory mitigation for temporal losses, are not and cannot be considered to be claims for civil penalties. See United States v. Banks, 115 F.3d 916, 918-19 (11th Cir. 1997) (distinguishing between civil penalties and equitable relief in a Clean Water Act case).

Second, as the Court recognized elsewhere in the decision, Mr. Harris' opinion regarding the Defendant's financial capability "has nothing to do with the official relief sought against Smith" and he provided only an "overall amount as to what Smith could pay, in his opinion, for *everything*." See Order at 14 n.15 (emphasis in original). Even if the costs to restore the areas impacted by the four illegal dams, the temporal mitigation sought by the United States, and the requested civil penalty were all added together, the total amount of *all* equitable and legal relief sought by the United States still does not approach $1.5 million.[4] The Court's statement that the

---

[4] As noted in the Court's decision, $89,000 was the estimated restoration cost (earthmoving, culverts, and tree planting) and mitigating for the temporal losses to stream and wetland function would cost approximately $217,365. See Order at 4-5, 10. With the $300,000 civil penalty, the total of these three items requested by the United States is only $606,365. This total amount is comparable to the $500,000 gain in net worth Mr. Smith achieved in the past year alone, Day 2 Tr. at 151, lines 6-10, and represents less than 31% of Mr. Smith's current liquid net assets (without counting his unclaimed tax refund and additional sources of income discussed at trial).

United States was seeking relief amounting to 79% of Defendant's liquid assets, Order at 24, simply was incorrect, as were the conclusions that followed in that paragraph of the Order.

In sum, the Court was mistaken in its conclusion that the United States increased its claim for civil penalty from $300,000 to $1,500,000, for the first time and without explanation, on the first day of the Phase II trial.  This error was repeated in several places in the Order, and unfortunately creates an inaccurate perception regarding the United States' enforcement position.  At a minimum, the United States' claimed relief should be described accurately, so that the basis for the Court's adjudication regarding the civil penalty is not misunderstood.

Dated: August 4, 2014    Respectfully submitted,

SAM HIRSCH
Acting Assistant Attorney General
Environment & Natural Resources Division

By:   */s/ Michael C. Augustini*
MARTIN F. MCDERMOTT (IL Bar 6183307)
MICHAEL C. AUGUSTINI (DC Bar 452526)
United States Department of Justice
Environment & Natural Resources Division
Environmental Defense Section
P.O. Box 7611
Washington, D.C. 20044-7611
Tel: (202) 514-4122 (McDermott)
Tel: (202) 616-6519 (Augustini)
Fax: (202) 514-8865
Email: martin.mcdermott@usdoj.gov
Email: michael.augustini@usdoj.gov

KENYEN R. BROWN
United States Attorney
Southern District of Alabama

STEVE BUTLER
First Assistant United States Attorney
Chief, Civil Division
Office of the United States Attorney
Southern District of Alabama
United States Attorney's Office

                                              63 South Royal Street, Suite 600
                                              Mobile, AL 36602

                                              COUNSEL FOR PLAINTIFF UNITED STATES OF AMERICA

OF COUNSEL:

PAUL SCHWARTZ.
Associate Regional Counsel
United States Environmental Protection Agency, Region 4
61 Forsyth Street, S.W.
Atlanta, Georgia  30303
(404) 562-9576

## **CERTIFICATE OF SERVICE**

I hereby certify that on August 4, 2014, I served the foregoing motion through the Court's Electronic Filing System (ECF) on the following attorney representing Defendant Hamilton Smith: Mark D. Ryan, Post Office Box 1000, Bay Minette, Alabama 36507.

        By:    */s/ Michael C. Augustini*
                  United States Department of Justice