**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

UNITED STATES OF AMERICA,      :

      Plaintiff,             :

vs.                       :      CA 12-0498-KD-C

HAMILTON SMITH,         :

      Defendant.

## REPORT AND RECOMMENDATION

This cause is before the Magistrate Judge for issuance of a report and recommendation, pursuant to 28 U.S.C. § 636(b), on plaintiff's motion for reimbursement of expenses pursuant to Fed.R.Civ.P. 37(c)(2) (Doc. 117) and the defendant's response in opposition (Doc. 136). Upon consideration of the foregoing pleadings (with attachments), and all other relevant documents in this file, the Magistrate Judge recommends that the Court **GRANT IN PART** the plaintiff's motion for reimbursement of expenses (Doc. 117).

## FACTUAL BACKGROUND

The United States instituted its Clean Water Act case against Hamilton Smith in this Court on August 6, 2012, alleging that the defendant discharged pollutants, "including dredged or fill material, into waters of the United States in Baldwin County, Alabama, without authorization by a permit issued by the United States Army Corps of Engineers[], in violation of CWA section 301(a), 33 U.S.C. § 1311(a)." (Doc. 1, at 1.) The complaint otherwise reads, in relevant part, as follows:

      13.    CWA section 502(7), 33 U.S.C. § 1362(7), defines "navigable waters" as "the waters of the United States, including the territorial seas."

14.     33 C.F.R. § 328.3(a)(1), (2), (5), and (7), and 40 C.F.R. § 232.2, define "waters of the United States" to include: all waters which are currently used, were used in the past, or may be susceptible to use in interstate or foreign commerce; tributaries to such waters; and wetlands adjacent to such waters or their tributaries.

15.     33 C.F.R. § 328.3(b) and 40 C.F.R. §§ 122.2 and 232.2 define "wetlands" as "those areas that are inundated or saturated by surface or ground water at a frequency and duration sufficient to support, and that under normal circumstances do support, a prevalence of vegetation typically adapted for life in saturated soil conditions." 33 C.F.R. § 328.3(c) defines "adjacent" as "bordering, contiguous, or neighboring." Wetlands separated from other waters of the United States by man[]made dikes or barriers, natural river berms, beach dunes and the like are "adjacent wetlands." *Id*.

.     .     .

21.     Beginning in 1998, continuing at least through 2004, at times and locations best known to Defendant, Defendant and/or persons acting on his behalf, discharged dredged or fill material into waters of the United States without a permit under CWA section 404. The discharges were made into Dennis Creek, a perennial stream, and into four unnamed tributaries of Dennis Creek, and wetlands adjacent to and abutting Dennis Creek and its unnamed tributaries, near 30E55'13" north latitude and 87E51'03" west longitude, In Baldwin County, Alabama (the "Site").

22.     Dennis Creek is a direct tributary of the Tensaw River, a traditional navigable water. Dennis Creek's confluence with the Tensaw River is approximately 3 miles from the Site. The Tensaw River empties into Mobile Bay approximately fifteen (15) miles from its confluence with Dennis Creek. The Tensaw River and Mobile Bay are waters that are currently used, were used in the past, or may be susceptible to use in interstate or foreign commerce. A significant nexus exists between the affected tributaries, Dennis Creek, and their adjacent wetlands and the Tensaw River.

.     .     .

30. Defendant has violated and continues to violate CWA section 301(a), 33 U.S.C. § 1311(a), by his unauthorized discharges of dredged or fill material into waters of the United States, including Dennis Creek and unnamed tributaries of Dennis Creek, and wetlands adjacent to and abutting Dennis Creek and its tributaries, at the Site.

(*Id.* at ¶¶13-15, 21-22 & 30.)   In answer to the complaint, filed August 28, 2012, Smith

stated he was without sufficient information or knowledge to either admit or deny

paragraphs 13-15, denied the allegations in paragraph 21, denied that Dennis Creek is a "traditional navigable water" but stated he was without sufficient information or knowledge to admit or deny the remaining portion of paragraph 22, and denied the allegations contained in paragraph 30. (Doc. 4, at 2-3, 3 & 4.)

The parties filed their Rule 26(f) report on October 15, 2012, at 5:36 p.m. (*See* Doc. 7.) Earlier that day, plaintiff's counsel emailed counsel for the defendant and supplied counsel with numerous case citations and "holdings" that "man[]made and man-altered structures/waters are covered by the Clean Water Act." (Doc. 117, Exhibit 1, at 1.) Plaintiff's counsel concluded the email in the following manner: "If you are agreeable based on the case law, we would like to be [able to] say in the report that Mr. Smith is not contesting the prima facie elements of the CWA claim—including waters of the United States—but the focus of discovery should be on the affirmative defenses and other remedy issues." (*Id.* at 2.) Such agreement was not forthcoming inasmuch as the parties, in their Rule 26(f) report, identified a total of twelve (12) subjects upon which discovery need be had, including the following subjects relating to liability: "(1) Smith's knowledge of CWA requirements; . . . (5) the role that Dennis Creek plays with respect to the chemical, physical, and biological integrity of waters of the United States, including the Tensaw River and Mobile Bay; [and] (6) the hydrological conditions at the Site and along relevant segments[.]" (Doc. 7, at 6.) The Court entered its Rule 16(b) scheduling order on October 17, 2012. (Doc. 8.)[1]

---

[1]     The order set forth a discovery completion date of September 13, 2013, and ordered the plaintiff to make its disclosure of expert testimony, including reports, not later than July 12, 2013. (*Id*. at 1 & 2.) The discovery completion date was later extended by two weeks. (*See* Doc. 36.)

On October 19, 2012, counsel for plaintiff emailed counsel for Smith a proposed stipulation and order in an effort to streamline discovery. (*Compare* Doc. 117, Exhibit 1, at 1 *with id.,* [Proposed] Joint Stipulation Regarding Claims and Defenses and [Proposed] Order Regarding Joint Stipulation on Claims and Defenses.) The proposed joint stipulation and order both read, in relevant part, as follows:

> 1.      Smith no longer denies and does not dispute the following allegations in Count 1 of the United States' Complaint, and Smith's Answer shall be amended accordingly in this case: the allegations in paragraphs 21-22; the allegation in paragraph 23 that Smith's activities at the Site resulted in discharges of dredged or fill material into waters of the United States (but not the allegation in said paragraph that such activities were "unauthorized," which remains disputed); paragraphs 24-26; the allegation in paragraph 27 that Smith either owned, leased or otherwise controlled the property on which each alleged discharge of dredged or fill material into waters of the United States occurred (but not the allegation in said paragraph that such activities were "unauthorized," which remains disputed); the allegation in paragraph 28 that Smith conducted, directed[,] contracted for, supervised and/or otherwise controlled and/or participated in the activities at issue in paragraph 21 (but not the allegation in paragraph 28 that such activities were "unauthorized," which remains disputed); and paragraph 29. Specifically, Smith does not and shall not dispute in this case that: (1) Smith is a "person" covered by the CWA; (2) Smith discharged "pollutants" from "point sources" into Dennis Creek and its tributaries at the Site; (3) Dennis Creek and its tributaries at the Site are "waters of the United States" for purposes of the CWA and related regulations[;] and (4) Smith did not have and has not obtained a permit for the alleged activities pursuant to CWA Section 404(a), 33 U.S.C. § 1344(a).

> 2.      As stated above, Smith continues to dispute and deny that his alleged activities were unauthorized and denies that his activities required a permit issued by the Corps pursuant to CWA Section 404(a), 33 U.S.C. § 1344(a), for the reasons set forth in the first affirmative defense in the Answer. Smith also continues to assert that the applicable statute of limitations may bar some or all of the United States' claims. In addition to those affirmative defenses, Smith reserves the right to dispute the following issues regarding the alleged CWA violations: (1) the appropriate scope of restoration at the Site; (2) the need for other mitigation measures; and (3) the amount of civil penalty to be imposed by the Court.

(Doc. 117, Exhibit 1, Joint Stipulation Regarding Claims and Defenses, at 2-3; *see also id.,* [Proposed] Order Regarding Joint Stipulation on Claims and Defenses, at 1-2.) Again,

however, there was no response forthcoming from Smith's attorneys regarding the joint stipulation on claims and defenses proposed by counsel for the United States. Instead, counsel for Smith penned the following email to counsel for the United States on November 5, 2012:

> As a follow-up to our conversation, please find attached an aerial photo with the potential areas of dispute listed as "A"-"F". As we discussed, I will address these briefly as follows:
>
> A—Pond behind house; this area is south of a field/wooded rainwater runoff and has a spring seepage from the hillside just behind the house. We believe this would not be a jurisdictional wetland under the CWA.
>
> B—Sometimes identified as the HWY 225 impoundment. This crossing was installed to access timber on the south side of the tract. We agree that this is a jurisdictional wetland under the CWA. This crossing is located where the old stage coach road crossed. We believe that this crossing meets all BMPs and is not subject to recapture as the area was historically subject to shallow water inundation due to prevalent beaver activity. A standpipe system is utilized to allow the free flow of water and inhibit blockage by beavers[.] We believe that this crossing would be subject to the statute of limitations.
>
> C & D—[T]hese are small crossings with flow through culverts leveled on the terrain at the toe of the surrounding bluff installed for logging access to the bluff above. Water occurs from spring seepage from the sides of the hills. We believe these would likely also not be jurisdictional wetlands under the CWA.
>
> E—Sometimes identified as the "Upper Crossing", this crossing was installed after the B, C and D crossings to provide more direct access for heavy equipment and trucks utilized in silviculture operations to the east of this crossing. We believe that this crossing meets all BMPs and is not subject to recapture. This crossing was subsequently supplemented with a very large culvert at the request of the EPA.
>
> F—This is a small crossing and pond across a "draw" or rainfall drainage back in the early 90s with the assistance of the local Soil and Water Conservation office. We believe this would not be a jurisdictional wetland under the CWA and would be subject to the statute of limitations.

(Doc. 117, Exhibit 2.)[2]

On December 12, 2012, the United States served written discovery on Smith, including its first set of requests for admission. (*Compare* Doc. 117, Exhibit 3 *with* Doc. 24, at 2 (submission order which makes reference to the fact that plaintiff served written discovery on the defendant on December 12, 2012).) Request for Admission 18 asked Smith to "[a]dmit that Dennis Creek[3] qualifies  as 'Waters of the United States' for purposes of the Clean Water Act." (Doc. 117, Exhibit 3, at 3 (footnote supplied).)  Smith made the following response: "**Admit that Dennis Creek constitutes the waters of the United States. The Defendant does not adopt the overly broad definition of Dennis Creek used by the United States.**" (Doc. 117, Exhibit 4, at 3 (emphasis in original).) Request for Admission 18, along with numerous other requests for admission, interrogatories, and requests for production, were the subject of a motion to compel discovery filed by the plaintiff. (*See* Doc. 18.)

> Rule 36 requires Smith to provide a straight answer to the United States' admissions focusing on the status of Dennis Creek under the CWA. Despite the United States' efforts to eliminate these issues cooperatively before serving formal discovery, Smith refused to enter any stipulation, forcing the United States to prepare a series of requests to elicit Smith's position on whether Dennis Creek qualifies as "waters of the United States" for purposes of the CWA. *See* RFAs 10, 11, 12, 14, 15, 17, 18, 19, 20, 21, 23, 24, 25, 26, 27, 28, 29, 30, 34, 35, and 36. Smith's approach to all of the requests is illustrated by his response to RFA 18:

---

[2]     Plaintiff represents in its sanctions motion, and the defendant does not dispute the representation, that "[d]efendant's November 5, 2012 email uses different alphabetical references for the tributaries than those ultimately agreed to by the parties for trial. It refers to Creek E as Creek A, and to Creeks A and B as Creeks C and D, respectively." (Doc. 117, at 4.)

[3]     The United States defined "Dennis Creek" in its requests for admission as follows: "'shall mean the main stem of Dennis Creek, which runs through the Site, any tributaries (whether named or unnamed) within its watershed, and any adjacent wetlands.'" (Doc. 136, Exhibit A.)

18.    Admit that Dennis Creek qualifies as "Waters of the United States" for purposes of the Clean Water Act.

RESPONSE:  Admit that Dennis Creek constitutes the waters of the United States. The Defendant does not adopt the overly broad definition of Dennis Creek used by the United States.

Augustini Decl. Ex. 2. If Smith had just responded with the first sentence, there would be no dispute, but the second sentence renders the response vague and ambiguous. Specifically, the United States contends that Smith's statement that he "does not adopt" the United States' definition of Dennis Creek creates unnecessary confusion regarding the scope and meaning of the admissions. The problem is that Smith provided no explanation of how *he* defines "Dennis Creek" for purposes of his responses to those RFAs. Without clarification, the United States has no way of knowing precisely what facts Smith has admitted and what he has denied, and whether any actual dispute between the parties remains regarding these issues. This renders Smith's responses evasive and incomplete. . . . Accordingly, the Court should require Smith to provide a complete response to each of the following RFAs: 10, 11, 12, 14, 15, 17, 18, 19, 20, 21, 23, 24, 25, 26, 27, 28, 29, 30, 34, 35, and 36. While Smith need not adopt the United States' definition if he disagrees with it, he must be required to specify how he defines "Dennis Creek" for purposes of his admissions, and be bound by that response for all future purposes in this action. Indeed, the purpose of Rule 36(a) is to eliminate uncertainty, not perpetuate it, and to establish certain material facts as true in order to narrow the range [of] disputed issues in the case.

(Doc. 18, at 13-14 & 14 (emphasis in original; footnote omitted).) The undersigned set plaintiff's motion to compel down for a hearing and ordered counsel and their clients to appear for the hearing unless the parties were able to reach agreement on the entirety of the discovery dispute to which the motion was addressed. (*See* Doc. 24.) Thereafter, the parties filed a joint stipulation regarding the motion to compel and request to cancel hearing (Doc. 26); counsel for the parties were advised by telephone that the April 4, 2013 hearing was canceled and that a written order would be entered by the undersigned with respect to the stipulation (Doc. 28, at 1). The Court's April 5, 2013 order reads, in relevant part, as follows:

The undersigned initially observes that the parties' joint stipulation (Doc. 26) **MOOTS** plaintiff's motion to compel (Doc. 18).

Third, Smith has stipulated for clarification purposes that all of his responses to plaintiff's Requests for Admission regarding "Dennis Creek,"—namely Requests for Admission 10, 11, 12, 14, 15, 17, 18, 19, 20, 21, 23, 24, 25, 26, 27, 28, 29, 30, 34, 35, and 36—"are premised upon a more precise definition of Dennis Creek to include the main stem of Dennis Creek as depicted on available maps in the possession of the United States." (Doc. 26, at 3.)[4]

(Doc. 28, at 1 & 3-4.)

According to the United States, in light of Smith's definition of Dennis Creek and consistent refusal to admit that the tributaries and adjacent wetlands referenced in plaintiff's definition (and at issue in this case from onset) were jurisdictional waters, it was forced "to engage experts (Dr. William Kruczynski and Mary Sitton) to prepare a significant nexus analysis in order to prove jurisdiction at trial[,]" (Doc. 117, at 4-5),[5]

---

[4] "Since the United States was merely seeking Smith's definition of Dennis Creek to enable it to understand his responses to the aforementioned Requests for Admission (*see* Doc. 18), and has now received that definition (Doc. 26, at 3), the defendant obviously need not make any supplemental responses to Requests for Admission 10, 11, 12, 14, 15, 17, 18, 19, 20, 21, 23, 24, 25, 26, 27, 28, 29, 30, 34, 35, and 36." (Doc. 28, at 4 n.4.)

[5] During his deposition on September 5, 2013, Dr. Kruczynski gave the following testimony:

Q    What was the purpose of the boat trip, in your understanding?

A    To look at the lower reaches of Dennis Creek and where it entered Dennis Lake and the Tensaw River and to sample a portion of the wetland adjacent to the lower reaches of Dennis Creek to determine the vegetative community of that part of the Dennis Creek ecosystem.

Q    Why was that necessary in view of your evaluation of the site?

A    It has to do with determining significant nexus for jurisdiction under the Clean Water Act.

Q    Did you have information from the United States that Mr. Smith had admitted that Dennis Creek at the site was the jurisdictional water of the United States?

(Continued)

only to find out several months after its experts had disclosed their reports that defendant's own expert, Dr. Barry Vittor, agreed that the tributaries/streams and wetlands at issue are jurisdictional waters under the Clean Water Act (Doc. 117, Exhibit 8, September 18, 2013 Deposition of Barry A. Vittor, at 67). And during the trial of this action, Vittor testified that during his 2006 visit to the site it was patently obvious, without any need for him to perform any field work, that the tributaries/streams and

---

A    Yes.

Q    So if that's an admitted aspect, why would you need to do that independent work?

A    Just to be thorough.

Q    So you felt it was necessary to establish proof of what was admitted?

A    You could state it that way, but I wanted to be thorough to determine the continuity of wetlands from Mr. Smith's property to Dennis Lake.

Q    Could that not have been determined from aerial photographs?

A    It was determined from aerial photographs, but we wanted the ground truth to make sure that the aerial photograph signature was being read correctly by checking on the ground at determined locations.

Q    I guess my curiosity is if you have an aerial photograph showing a river and showing Dennis Lake coming off the river and showing Dennis Creek flowing to Dennis Lake, do you need to ride in a boat to determine tat the river is actually there?

A    I wanted to see it myself.

(Doc. 136, Exhibit B. Deposition of William Kruczynski, Ph.D., at 40-42; *see also* Doc. 136, at 3-4 (defendant's citation to and quotation of Dr. Kruczynski's trial testimony that the defendant's stipulation that Dennis Creek constituted jurisdictional waters did not resolve everything inasmuch as the issue was more complicated and required him to be able to say that he boated from the Tensaw River to the property while staying on waters or wetlands the entire way).)

wetlands at issue are jurisdictional waters and that he advised Smith and his attorney of his position in this regard. (Doc. 117, Exhibit 9, April 2, 2014 Trial Transcript, at 5-6.)

The United States attached a portion of Dr. Kruczynski's July 9, 2013 expert report to its Rule 37(c)(2) motion for reimbursement of expenses, that is, pages 11 through 18. (Doc. 117, Exhibit 7.) All pages are single-spaced and of those pages provided there can be no question but that a solid seven (7) pages are dedicated to Dr. Kruczynski's analysis of significant nexus between impacted waters on Smith's property and traditional navigable waters. (*See id.*) And while the undersigned can readily discern that there were ten and one-half (10½) pages of the report before the relevant "significant nexus" analysis began, there is no way of knowing the exact length of the report.[6]

In addition to attaching a portion of Dr. Kruczynski's expert report to its Rule 37(c)(2) motion for reimbursement of expenses, the United States attached the declarations of two of its experts, Dr. Kruczynski and Mary Sitton, who were tasked, at least in part, with the jurisdictional analysis—or supplying proof in support of the analysis—necessitated by Smith's refusal to admit that the creeks and adjacent wetlands at issue in this case were jurisdictional waters of the United States covered by the Clean Water Act. (*Compare* Doc. 117, Exhibit 11, Kruczynski declar., at ¶ 2 *with id.*, Exhibit 12, Declaration of Mary Sitton, at ¶ 2.) Dr. Kruczynski's declaration reads, in relevant part, as follows:

---

[6]     Interestingly, Dr. Kruczynski states in his declaration that "[a]ttached hereto is a true and correct copy of the Rule 26 expert report that I signed on July 9, 2013[.]" (Doc. 117, Exhibit 11, Declaration of William L. Kruczynski, Ph.D., at ¶ 2.) However, that entire expert report is not, in fact, attached to Dr. Kruczynski's declaration. (*See id.*) As previously indicated, therefore, the undersigned has no way to "fix" the length of that report.

2.	. . . Defendant's refusal to admit to Clean Water Act jurisdiction necessitated that the United States prepare a jurisdictional analysis to prove that there was a significant nexus between the waters at Mr. Smith's property and the Tensaw River, which is presented in my Rule 26 report. Mary Sitton, another United States' expert witness, reviewed aerial photographs and provided supporting analysis for my significant nexus work.

3.	I have reviewed my billings in this matter to determine how much the United States incurred for the preparation of my significant nexus analysis, and *believe* that the appropriate amount is $15,495. I am not including in that total my billables relating to other issues in the case aside from Clean Water Act jurisdiction.

(Doc. 117, Exhibit 11, Kruczynski declar., at 2-3 (emphasis supplied).) Sitton confirms

that she "reviewed aerial photographs and provided supporting analysis for Dr.

Kruczynski's significant nexus work." (Doc. 117, Exhibit 12, Sitton declar., at ¶ 2.)

3.	I have reviewed my billings in this matter to determine how much the United States incurred for the preparation of my part of the significant nexus analysis, and *believe* that the appropriate amount is at least $20,000. I am not including in that total my billables relating to other issues in the case aside from Clean Water Act jurisdiction.

(*Id.* at ¶ 3 (emphasis supplied).)

## CONCLUSIONS OF LAW

"If a party fails to admit what is requested under Rule 36[7] and if the requesting

party later proves a document to be genuine or the matter true, the requesting party

---

[7]	"The purpose of [] [R]ule [36] is 'to expedite the trial and to relieve the parties of the cost of proving facts that will not be disputed at trial.'" *Perez v. Miami-Dade County,* 297 F.3d 1255, 1264 (11th Cir. 2002) (quoting 8A, Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, *Federal Practice and Procedure* § 2252 (2d ed. 1994) (other citation omitted)), *cert. denied,* 537 U.S. 1193, 123 S.Ct. 1291, 154 L.Ed.2d 1028 (2003). "A responding party has essentially four possible options: admit in part or in full; deny the request in part or in full; set forth reasons why the party cannot admit or deny; or object to the request by specific objection or by a motion for protective order." *Bruggemann v. Amacore Group, Inc.,* 2011 WL 1899251, *4 (M.D. Fla. Apr. 1, 2011) (citing Fed.R.Civ.P. 36(a)(4) & (6)), *report and recommendation adopted,* 2011 WL 1930561 (M.D. Fla. May 19, 2011). Of course, "[o]nce the matter is admitted, Rule 36(b) provides that it is 'conclusively established unless the court on motion permits withdrawal or amendment of the admission.'" *Perez, supra,* at 1264, quoting Fed.R.Civ.P. 36(b).

(Continued)

There can be no question but that in this case Smith admitted in part Request for Admission 18 and implicitly denied it in part. As explained above, Smith admitted that Dennis Creek constituted waters of the United States but then "stepped back" from that admission by asserting that he did not adopt the definition of Dennis Creek used by the United States. Since the plaintiff defined Dennis Creek as "the main stem of Dennis Creek, which runs through the Site, any tributaries (whether named or unnamed) within its watershed, and any adjacent wetlands[]" (Doc. 136, Exhibit A), and plaintiff later supplied his definition of Dennis Creek to be "the main stem of Dennis Creek as depicted on available maps in the possession of the United States[]" (Doc. 26, at 3), there is no question but that Smith admitted in part and implicitly denied in part plaintiff's Request for Admission 18, *see* Fed.R.Civ.P. 36(a)(4) ("[W]hen good faith requires that a party qualify an answer or deny only a part of a matter, the answer must specify the part admitted and qualify or deny the rest."). And because Smith would not admit that the tributaries within Dennis Creek's watershed and the adjacent wetlands were waters of the United States for purposes of the Clean Water Act, plaintiff was required to make such proof. *Compare United States v. Robison*, 505 F.3d 1208, 1222 (11th Cir. 2007) ("[P]ursuant to *Marks*, we adopt Justice Kennedy's 'significant nexus' test as the governing definition of 'navigable waters' under *Rapanos*. . . . Again, under Justice Kennedy's concurrence, a water can be considered 'navigable' under the CWA only if it possesses a 'significant nexus' to waters that 'are or were navigable in fact or that could reasonably be so made.' . . . Moreover, a 'mere hydrologic connection' will not necessarily be enough to satisfy the 'significant nexus' test.") *with Rapanos v. United States,* 547 U.S. 715, 779-780, 126 S.Ct. 2208, 2248, 165 L.Ed.2d 159 (2006) (Kennedy, J., concurring in the judgment) ("Consistent with *SWANCC* and *Riverside Bayview* and with the need to give the term 'navigable' some meaning, the Corps' jurisdiction over wetlands depends upon the existence of a significant nexus between the wetlands in question and navigable waters in the traditional sense. The required nexus must be assessed in terms of the statute's goals and purposes. Congress enacted the law to restore and maintain the chemical, physical, and biological integrity of the Nation's waters, and it pursued that objective by restricting dumping and filling in 'navigable waters[.]' With respect to wetlands, the rationale for Clean Water Act regulation is, as the Corps has recognized, that wetlands can perform critical functions related to the integrity of other waters—functions such as pollutant trapping, flood control, and runoff storage. Accordingly, wetlands possess the requisite nexus, and thus come within the statutory phrase 'navigable waters,' if the wetlands, either alone or in combination with similarly situated lands in the region, significantly affect the chemical, physical, and biological integrity of other covered waters more readily understood as 'navigable.' When, in contrast, wetlands' effects on water quality are speculative or insubstantial, they fall outside the zone fairly encompassed by the statutory term 'navigable waters.'" (all internal citations and some quotation marks omitted)); *but cf. id.* at 739 & 742, 126 S.Ct. at 2225 & 2226 (plurality opinion) ("In sum, on its only plausible interpretation, the phrase 'the waters of the United States' includes only those relatively permanent, standing or continuously flowing bodies of water 'forming geographic features' that are described in ordinary parlance as 'streams[,] . . . oceans, rivers, [and] lakes.' The phrase does not include channels through which water flows intermittently or ephemerally, or channels that periodically provide drainage for rainfall. . . . [O]nly those wetlands with a continuous surface connection to bodies that are 'waters of the United States' in their own right, so that there is no clear demarcation between 'waters' and wetlands, are 'adjacent to' such waters and covered by the Act. Wetlands with only an intermittent, physically remote hydrologic connection to 'waters of the United States' do not implicate the boundary drawing problem of *Riverside Bayview*, and thus lack the necessary connection to covered waters that we described as a 'significant nexus' in *SWANCC*[.]"). In meeting the "significant nexus" test, the United States employed experts whose reports it was required to disclose first (*see* Doc. 8, ¶ 6 ("The disclosure of expert

(Continued)

may move that the party who failed to admit pay the **reasonable** expenses, including attorney's fees, incurred in making that proof." Fed.R.Civ.P. 37(c)(2) (emphasis supplied; footnote added).[8] The rule goes on to instruct district courts that they "**must** so order [this sanction] unless: (A) the request was held objectionable under Rule 36(a); (B) the admission sought was of no substantial importance; (C) the party failing to admit had a reasonable ground to believe that it might prevail on the matter; or (D) there was other good reason for the failure to admit." *Id*. (emphasis supplied). The Eleventh Circuit has recognized that the sanction set forth in Rule 37(c)(2) "encourages parties to identify undisputed issues early so as to avoid unnecessary costs." *Mutual Serv. Ins. Co. v. Frit Industries, Inc.*, 358 F.3d 1312, 1326 (11th Cir. 2004) (citation omitted).

The Eleventh Circuit, in *Perez, supra,* expounded on the third exception set forth in the rule by recognizing that "[t]he implicit message of Rule 37 is . . . that issues *obviously subject to dispute should be resolved at trial,* not in a discovery motion." 297 F.3d at 1269 (emphasis in original); *see Mutual Serv. Ins. Co., supra,* at 1326 ("The 'true test under Rule 37(c) is not whether a party prevailed at trial but whether he acted reasonably in believing that he might prevail.'" (citation omitted)). As for exception (B), "[a]n issue is of substantial importance when it is material to the disposition of the case." *Securities and Exchange Comm'n v. Happ,* 392 F.3d 12, 34 (1st Cir. 2004), citing

---

testimony, including reports, required by Fed.R.Civ.P. 26(a)(2) is to be made by Plaintiff on or before **July 12, 2013,** and by Defendant on or before **August 9, 2013**.")), only then to be made aware upon deposing Smith's expert—after disclosure of his expert report—that there was no dispute that the tributaries/streams and adjacent wetlands in question constitute waters of the United States.

[8] "The plain language of Rule 37 permits a Court to award monetary sanctions only after the requesting party has proved the matter at issue." *Point Blank Solutions, Inc. v. Toyobo America, Inc.,* 2011 WL 742657, *2 (S.D. Fla. Feb. 24, 2011) (citation omitted).

*Washington State Dep't of Transp. v. Washington Natural Gas Co., Pacificorp,* 59 F.3d 793, 806 (9th Cir. 1995).[9]

In this case, defendant Smith contends that exceptions (A) and (D) are applicable and, therefore, sanctions are not appropriate under Rule 37(c)(2). (Doc. 136, at 2-3 ("Defendant *admitted* the request, while noting that it did not concur with Plaintiff's overly broad and vague definition of the 'Dennis Creek.' The vague definition was **objectionable** and Defendant had good reason to protect his interests by noting the same and not inadvertently stipulating to more than he intended. The definition on its face could encompass just more than creeks A through E, but also other wet spots on Defendant's property. Therefore, Fed.R.Civ.P. 37(c)(2) should not apply since Defendant admitted the same, in part, and exceptions (A) and (D) apply to this situation."). While there is no question but that Smith admitted Request for Admission 18 in part, as reflected above, it is equally clear that Smith denied the request for admission in part as well; therefore, his partial admission argument cannot save him from the government's Rule 37(c)(2) motion. Moreover, Smith did not **object** to this request for admission; instead, he merely qualified his admission and, therefore, exception (A), *see* Fed.R.Civ.P. 37(a)(2)(A) ("the request was held objectionable under Rule 36(a)"[10]), is inapplicable. And, finally, the undersigned need disagree with the defendant as to the applicability of subsection (D), *see* Fed.R.Civ.P. 37(c)(2)(D) ("there was other good reason for the failure to admit")), inasmuch as the identity (albeit, not by "name") of the tributaries/streams/creeks—more specifically, Creeks A, B, and E—

---

[9]     "A district court's determination under Rule 37 is entitled to great deference by this court." *Mutual Serv. Ins. Co., supra,* 358 F.3d at 1326 (citation omitted).

[10]     "The grounds for objecting to a request must be stated." Fed.R.Civ.P. 36(a)(5).

and adjacent wetlands at issue in this case have been known to the parties from the "get go." Thus, there was simply no chance that by admitting this request that Smith would admit that "other wet spots"[11] on his property were jurisdictional waters. Exception (D) simply does not apply.

Smith also contends that his responses to Request for Admission 18 did not cause plaintiff to incur expenses to prove the jurisdictional waters issue, *see* Fed.R.Civ.P. 37(c)(2) (only providing for an award of reasonable expenses incurred in "making the proof")), in light of Dr. Kruczynski's deposition and trial testimony that he understood at the time he was retained that it was stipulated that Dennis Creek constituted jurisdictional waters of the United States. (*See* Doc. 136, at 3-4.) The problem with Smith's argument is that he takes an overly restrictive view of Dr. Kruczynski's testimony. Given the manner in which the questions were posed to plaintiff's expert, he had to "admit" to this stipulation because the parties emphatically agreed and stipulated that the "main stem" of Dennis Creek constituted jurisdictional waters of the United States. However, as is evident from the remainder of the expert's testimony, the jurisdictional issue was more complicated than indicated by defense counsel inasmuch as Dr. Kruczynski's focus in this regard was directed to the tributaries (and adjacent wetlands) of Dennis Creek to establish that they constituted waters of the United States. And this "significant nexus" analysis by Dr. Kruczynski, as set forth above, was necessitated by the defendant's failure to admit that these very tributaries (and adjacent wetlands) constituted waters of the United States. Accordingly, the undersigned disagrees with Smith in this regard and finds that his failure to admit that the

---

[11]     Smith nowhere identifies any of these "wet spots."

tributaries and adjacent wetlands at issue in this case were jurisdictional waters of the United States caused the government to incur expenses (namely, expert expenses) to prove same.

In this same vein, Smith contends that "**[p]laintiff cannot separate Mary Sitton's expert mapping and delineations as to just the jurisdictional waters issue since it was all needed and utilized regardless of any stipulations.**" (Doc. 136, at 4.)

> Defendant does not contend that such maps and delineations were not helpful for Dr. Kruczynski's independent significant nexus work; however, that work would have been completed by Ms. Sitton regardless of Defendant's response to the request for admission, in order for Plaintiff[] to properly present its case and identify the boundaries and measurements of the streams and wetlands at issue. In fact, those same aerial maps, measurements, and figures were presented and utilized by the Plaintiff at both trial phases (at which point there was no dispute over whether the jurisdictional issues were stipulated).

(*Id.* at 5.) Thus, Smith concludes, the government's "expenses for Ms. Sitton's expertise were [] not the result of [his] Rule 36 responses." (*Id.*) And while defendant's argument in this regard might appear to be an attack on the reasonableness of Sitton's expenses— perhaps because Smith makes the same arguments in that portion of his brief (*see id.* at 6)—the undersigned cannot find that this argument is meritless. At the same time, the undersigned cannot definitively find that the aerial photographs which Sitton references in her declaration (*see* Doc. 117, Exhibit 12, at ¶ 2) were admitted during the trial of this cause because the undersigned did not conduct the trial. However, if, in fact, those aerial photographs were admitted and utilized during the trial then they were likely admitted for some purpose other than the jurisdictional waters issue because the jurisdictional waters issue was a "dead" issue by the time of trial (*see, e.g.,* Doc. 117, at 5). Accordingly, plaintiff **SHOULD NOT** be reimbursed for Sitton's expenses in reviewing aerial photographs (and delineating the creeks and wetlands at issue) if it was necessary for her to review those photographs and make such delineations anyway

in order for the United States "to properly present its case and identify the boundaries and measurements of the streams and wetlands at issue[]" (*see* Doc. 136, at 5). *Compare Hillside Productions, Inc. v. County of Macomb,* 2009 WL 3059147, *2 (E.D. Mich. Sept. 24, 2009) ("Rule 37(c)(2) awards are inappropriate where the denied admission is proven with evidence that the requesting party would have offered regardless of the denial.") *with Afcan v. United States,* 2011 WL 1869353, *2 (D. Alaska, May 13, 2011) ("The task really is to separate the amount of work done to prove recklessness, which would also have been done to prove the standard of care from the amount of work done to prove recklessness only. The former is compensable, but the latter would not be compensable." (internal footnote omitted)).

The undersigned's final consideration centers on the reasonableness of the expenses plaintiff requests as a sanction, that is, $35,495.00 in expert expenses. Rule 37(c)(2) specifically references that the party who fails to admit need pay "the ***reasonable*** expenses . . . incurred [by the requesting party] in making that proof." *Id.* (emphasis supplied). Although the rule is silent on this point, the undersigned is of the opinion that the party moving for sanctions is responsible either for proving the inherent reasonableness of the expenses requested or, at the very least, providing the court with sufficient information from which it can determine that the amount of expenses requested is reasonable.[12] In this case, the United States has done neither.

The declarations of Dr. Kruczynski and Ms. Sitton merely state that the experts reviewed their billables and "***believe***" they billed the government $15,495 and $20,000, respectively, for their parts in the significant nexus analysis and that they are "not

---

[12] Stating this latter portion of the sentence somewhat differently, the undersigned finds that the moving party must provide this Court with an objective basis by which to estimate the value of the expert's services.

including in th[ose] total[s] [their respective] billables relating to other issues in the case aside from Clean Water Act jurisdiction." (Doc. 117, Exhibits 11 & 12 (emphasis supplied).) It should suffice to observe that a "belief" is not tangible proof of reasonableness and, indeed, the use of this adjective causes the undersigned to be inherently suspect and skeptical of the conclusory amounts set forth in the declarations of the two experts. This skepticism is confirmed by Smith's arguments in his brief in opposition (Doc. 136, at 5-6) that, for the undersigned, turn on their heads Dr. Kruczynski's and Ms. Sitton's declaration statements that their requests (again, $15,495.00 and $20,000.00) do not include any amounts relating to other issues in the case. It is impossible for the undersigned to "believe"—much less find—that Dr. Kruczynski dedicated $15,495.00 to his substantial nexus analysis—even giving him credit for the time he spent in a kayak—inasmuch as his total expert report fee was $23,000.00 (*see* Doc. 136, at 5 (Smith notes Dr. Kruczynski's trial testimony "that his entire expert report cost approximately $23,000.00.")) and the pertinent analysis appears on only seven of an untold number of pages (*see* Doc. 117, Exhibit 7)[13] of a report that covered numerous other subjects (*see* Doc. 136, at 5 ("Dr. Kruczynski's extensive report covered, among other things . . ., a detailed determination of the linear footage of streams and acreage of wetlands impacted by filling and impounding (including a review of similarly situated waters in the study area); the loss of ecological functions of the wetlands (physical water quality, wildlife habitat and productivity); an evaluation

---

[13] It is impossible for the undersigned to know the length of Dr. Kruczynski's expert report since the United States did not attach to its motion the entire report. (*See id.*) What the undersigned does know, however, is that Dr. Kruczynski spent the first ten and one-half pages of his report discussing other matters and the middle of page 18 of his report through an unknown number of pages (to the end of his report) discussing "Loss of Ecological Functions Due to Filling and Creation of Impoundments on the Property" and the like. (*See id.*)

of the roads/dams under the 404(f) exemption (including all the Best Management Practices and the recapture provision); and a proposed remedy that set forth a detailed restoration plan.")). Moreover, it is similarly impossible for the undersigned to "believe" or find that Ms. Sitton spent $20,000.00 reviewing "aerial photographs" and providing "supporting analysis for Dr. Kruczynski's significant nexus work." (*See* Doc. 117, Exhibit 12, at ¶ 2.) Over and above the relevant observations made by Smith in his opposition (Doc. 136, at 6 ("The only reference Plaintiff states in its motion with regard to Ms. Sitton's work is that 'Dr. Kruczynski also illustrated his opinions and delineated the streams and wetlands on aerial photographs with the assistances of Mary Sitton.'")), any supporting analysis provided by Sitton to Kruczynski could not have been much because the report was authored not by Sitton and Kruczynski but only Kruczynski (*see* Doc. 117, Exhibit 7) and Sitton supplied her own report which apparently mentioned the jurisdictional waters issue only one time (*see* Doc. 136, at 6). As for her review of "aerial photographs," the undersigned simply cannot fathom how such review would have encompassed anywhere near the time contemplated by Sitton's billable "estimate." Finally, the straw that breaks the camel's back with respect to the Sitton "estimate" is that it is inherently unreasonable to believe that Sitton would have billed more time (by $4,500.00) than the expert specifically charged with the significant nexus analysis.

As previously indicated, the undersigned may have been able to get past the declaration "beliefs" of Dr. Kruczynski and Ms. Sitton had the United States provided those experts' itemized billings—including dates of work performed, a description of work performed on each date, the amount of time spent on each date performing the work described, and the hourly rate billed—but that, obviously, did not happen. Had such evidence been provided, of course, the Court could have discerned for itself

whether any double billing occurred for the same work and, otherwise, whether the billings were excessive, redundant, or unnecessary. *Cf. Hensley v. Eckerhart*, 461 U.S. 424, 434, 103 S.Ct. 1933, 1939-1940, 76 L.Ed.2d 40 (1983) (in the context of considering an award of attorney's fees under § 1988, the Supreme Court advised district courts to exclude excessive, redundant, or otherwise unnecessary hours); *Jean v. Nelson*, 863 F.2d 759, 772-773 (11th Cir. 1988) (discussing the reasonableness of the hours expended in the context of contentions by the government that the fee requests were not supported by sufficient documentation and often involved a duplication of effort), *judgment aff'd*, 496 U.S. 154, 110 S.Ct. 2316, 110 L.Ed.2d 134 (1990).

In light for the foregoing, the undersigned is placed in a position of "arriving" at a reasonable award of expenses to plaintiff for being forced to establish that Creeks A, B, and E (and adjacent wetlands) were jurisdictional waters of the United States. In consideration of the relevant pleadings in this case the undersigned recommends that the Court award to the United States reasonable expenses in the amount of $10,000.00. Even if the Court determines that the government should be able to recover some of the Sitton expense for her review of aerial photographs and supporting analysis, the undersigned is confident that an award of $10,000.00 will comfortably cover Sitton's reasonable expenses and those of Dr. Kruczynski in kayaking the waters around the site and penning seven pages of a report of untold pages—but, conservatively, three times seven pages in length—that cost the government a total of $23,000.00.

## CONCLUSION

The Magistrate Judge **RECOMMENDS** that plaintiff's motion for reimbursement of expenses pursuant to Fed.R.Civ.P. 37(c)(2) (Doc. 117) be **GRANTED IN PART,** with plaintiff being awarded reasonable expenses totaling $10,000.00 rather than the $35,495.00 requested.

## NOTICE OF RIGHT TO FILE OBJECTIONS

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court.  *See* 28 U.S.C. § 636(b)(1); FED.R.CIV.P. 72(b); S.D.ALA. L.R. 72.4. The parties should note that under Eleventh Circuit precedent, "the failure to object limits the scope of [] appellate review to plain error review of the magistrate judge's *factual findings*." *Dupree v. Warden,* 715 F.3d 1295, 1300 (11th Cir. 2013) (emphasis in original). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

**DONE** this the 4th day of November, 2014.

s/WILLIAM E. CASSADY
**UNITED STATES MAGISTRATE JUDGE**